UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILIP E. DeBLASIO,

                Plaintiff,

-v.-

MR. OLIVER and MS. SANTIAGO,

                Defendants.

18 Civ. 6842 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff filed this action under 42 U.S.C. § 1983 against two correction officers with whom he allegedly had an altercation while detained in New York City Department of Correction custody. For the past year, both defense counsel and the Court have tried to move this action along through discovery. However, Plaintiff has repeatedly and willfully ignored Court orders to respond to discovery requests, despite multiple warnings that his noncompliance could lead to dismissal of this suit. For the reasons explained below, Plaintiff's case is dismissed for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b), and for failure to comply with Court orders.

## BACKGROUND

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint on July 30, 2018. (Dkt. #2 (the "Complaint")). In the Complaint, Plaintiff alleged that on July 6, 2018, while he was detained at the Vernon C. Bain Correctional Center, a jail barge that is part of the Rikers Island correctional complex, he got into an altercation with two correction officers. (*See id.* at 4). Correction Officer Oliver is alleged to have taken Plaintiff's two Holy Qur'ans, thrown them

on the floor, and put Plaintiff in an upper body hold. (*Id.*). Thereafter, Plaintiff alleges, Correction Officer Santiago sprayed Plaintiff in the face with OC-4 (a type of pepper spray). (*Id.*). Plaintiff claims to have suffered mental anguish as a consequence of the altercation, and asked the Court, among other things, to suspend Oliver and Santiago. (*Id.* at 5).

On August 1, 2018, the Court granted Plaintiff *in forma pauperis* status. (Dkt. #5). On August 6, 2018, the Court issued an order: (i) directing the Clerk of Court to notify the New York City Department of Correction and the New York City Law Department of the order; (ii) requesting that Oliver and Santiago (together, "Defendants") waive service of summons; (iii) denying Plaintiff's request for *pro bono* counsel without prejudice to its renewal at a later date; and (iv) ordering Defendants to comply with Local Civil Rule 33.2, which requires them to serve responses to certain standard discovery requests. (Dkt. #7).

Defendants both waived service of summons. (Dkt. #9, 10). Santiago filed an answer to the Complaint on November 5, 2018 (Dkt. #19), and Oliver filed an answer to the Complaint and cross-claims against the City of New York on January 2, 2019 (Dkt. #24).

The Court held an initial pretrial conference on December 12, 2018. (Minute Entry for 12/12/2018). At that conference, Plaintiff notified the Court that he was scheduled to be transferred to another facility in early 2019. Plaintiff proposed advising the Court of his updated address following his transfer, at which point the Court could endorse the parties' proposed Case

Management Plan ("CMP"). The Court agreed. As discussed with the parties during the conference, the CMP would set discovery deadlines and would contain the date of the next conference with the Court. Put differently, the Court could not set the date of the next conference until the parties submitted a proposed CMP.

In March and April of 2019, after updating his address with the Court, Plaintiff wrote to the Court on several occasions, asking when the next conference was scheduled to be held. (Dkt. #31, 33, 35, 36). Upon receipt of each letter, the Court advised Plaintiff that the next conference would be promptly scheduled after Plaintiff and Defendants submitted the CMP. (Dkt. #32, 34). On each occasion, the Court asked Plaintiff to work with Defendants to submit a CMP. (*Id.*).

On May 1, 2019, the Assistant Corporation Counsel representing Santiago (the "ACC") filed a letter with the Court, relating that she had tried to initiate a phone call with Plaintiff to discuss deadlines for proceedings in this matter, in order to be able to fill out a proposed CMP, but that Plaintiff had stated that he did not want to discuss a CMP with the ACC without a lawyer present to assist him, and terminated the phone call. (Dkt. #38).

On May 2, 2019, the Court issued an order requiring the parties to appear for a telephone conference on May 28, 2019, to resolve any lingering confusion and to facilitate the submission of the CMP. (Dkt. #39). On May 9, 2019, the Court received requests from Plaintiff for copies of both the Complaint and forms for *pro bono* counsel. (Dkt. #40, 41). The Court sent the

requested documents to Plaintiff on May 10, 2019. (Dkt. Entries for 5/10/2019).

On May 28, 2019, the Court attempted to hold a conference in the instant action, but was thwarted by Plaintiff's obstructive conduct, which included yelling and cursing at both the facility guard and the Court. (Dkt. #42). At that time, it became clear to the Court that Plaintiff was refusing to participate in the preparation of the CMP, unless and until he was appointed counsel. (*Id.*). The Court reminded Plaintiff that he had no right to appointed counsel in a civil case, but could submit a request for the appointment of *pro bono* counsel. (*Id.*). The Court further ordered Plaintiff to participate in pretrial discovery and to meet and confer, telephonically, with counsel for Defendants to prepare a CMP that could be submitted jointly by the parties to the Court on or before June 27, 2019. (*Id.*). The Court cautioned Plaintiff that "refusal to participate in discovery may result in sanctions, including the possibility of dismissal of the case for failure to prosecute or failure to follow the Court's orders." (*Id.*).

On June 4, 2019, the Court received a letter from Plaintiff, apologizing for his outburst on the call. (Dkt. #44). On June 13, 2019, the Court received a further letter from Plaintiff seeking permission to amend his claim. (Dkt. #46). On June 14, 2019, the Court issued an order directing Plaintiff that on or before July 15, 2019, he should either: (i) provide the Court with additional information regarding how he would like to amend his complaint; or (ii) submit a proposed amended complaint. (Dkt. #47).

On June 27, 2019, the parties submitted a proposed CMP. (Dkt. #48). The Court endorsed the CMP on June 28, 2019. (Dkt. #49). Among other provisions, the Court-ordered CMP called for Plaintiff to provide HIPAA-compliant medical records release authorizations to Defendants by July 12, 2019, and for fact discovery to close on September 27, 2019. (*Id.*).

On July 30, 2019, the Court received a letter from Plaintiff conveying his belief that the case was getting too complicated for him and asking for time to find a lawyer. (Dkt. #54). The Court endorsed the letter, thereby staying discovery, and ordered Plaintiff to advise the Court on or before September 16, 2019, as to whether he had found counsel or would continue with the action *pro se.* (Dkt. #55). The Court did not hear from Plaintiff by that date.

The Court held a pretrial conference on October 9, 2019. (*See* Dkt. #61 (transcript)). At that conference, Plaintiff notified the Court that he had tried to obtain counsel, but had been unsuccessful. (*See id.* at 3-4). It became clear to the Court that Defendants had produced all relevant discovery to Plaintiff, but that Plaintiff had produced *no* discovery to Defendants. (*See id.* at 5-11).

The Court explained to Plaintiff that the reason Defendants were seeking to have him sign medical releases was because he was claiming that he had been sprayed with OC-4 and had suffered emotional distress from the incident. (*See* Dkt. #61 at 12-14). Plaintiff requested that Defendants resend him many of the documents they had previously served on him, claiming that many documents had been lost when he transferred facilities. (*See id.* at 14). The Court ordered both Defendants to resubmit their Rule 26 discovery and Local

5

Rule 33.2 disclosures, along with the CD containing footage of the alleged incident, to Plaintiff at his new facility. (*Id.*). Plaintiff also requested that Defendants re-serve their requests for discovery, including their interrogatories and document production requests. (*Id.* at 15). The Court ordered Defendants to re-serve those requests by October 21, 2019, and ordered Plaintiff to respond to them by December 2, 2019. (*Id.*). The Court instructed the parties that Plaintiff's deposition should take place before January 31, 2020. (*Id.* at 17). The Court explained the concept of a deposition to Plaintiff and he advised that he would not need to depose any of the Defendants. (*Id.* at 18). The ACC then explained on the call that counsel was preparing a protective order to be entered in this case that would be sent to Plaintiff. (*Id.* at 20). At the end of the conference, the Court ordered the ACC to obtain a copy of the transcript and send it to Plaintiff. (*See id.* at 20-21).

After the conference, the Court issued an order memorializing the conversation it had with the parties. (Dkt. #58). On October 31, 2019, the ACC filed a declaration stating that she had served a copy of the transcript from the October 9, 2019 conference on Plaintiff. (Dkt. #59).

On December 17, 2019, the ACC filed a letter with the Court explaining that she had twice sent Plaintiff her discovery demands, and had five times sent Plaintiff her request for a medical release, with pre-stamped and pre-addressed envelopes, to no avail. (Dkt. #63). She also explained that she had not received any response from Plaintiff regarding the proposed protective order that had been sent to him, by first-class mail, for his review and execution on

6

November 13, 2019. (*Id.*). On December 18, 2019, the Court told Plaintiff that it was very disappointed to hear that he had neither executed the medical release nor responded to Defendant Santiago's discovery requests. (Dkt. #64). The Court ordered Plaintiff to provide such documents on or before January 5, 2020. (*Id.*). The Court warned Plaintiff that the Court would dismiss his case for failure to prosecute if he did not comply with the Court's order. (*Id.*).

On January 21, 2020, the Court received a letter from the ACC indicating that, on December 30, 2019, she had received inadequate medical releases from Plaintiff, incomplete responses to Defendant Santiago's discovery demands, and no response to the proposed protective order. (Dkt. #65). The medical releases that Plaintiff provided were not the releases that the ACC had provided to Plaintiff and were missing essential information, such as the name of Plaintiff's medical provider, the party to whom the medical records should be released, and the types of medical information that may be released, all of which was required to process the release. (*See id.*). Due to the improper execution of the medical releases, on December 31, 2019, the ACC had provided Plaintiff with yet another set of pre-filled medical releases, sent to Plaintiff by certified express mail. (*Id.*). In her December 31, 2019 mailing, the ACC also included: (i) a deficiency letter addressing the discovery demands that Plaintiff had failed to address; (ii) a courtesy copy of the discovery demands; and (iii) a copy of the Court's December 18 Order granting Santiago's motion to compel. (*Id.*).

The ACC also arranged for a telephone call with Plaintiff, which call took place on January 16, 2020. (Dkt. #65). During the telephone call, Plaintiff stated that he received the discovery demands and new pre-filled medical release, and he assured the ACC that he would promptly execute the releases and return them on or before January 31, 2020. (*Id.*). The ACC explained to the Court that because of the deficiencies and delays, Defendants would not be able to take Plaintiff's deposition on or before January 31, 2020. (*Id.*).

The Court endorsed the ACC's letter on January 22, 2020, and ordered Plaintiff to provide the properly executed medical release and respond to Defendants' discovery requests on or before January 31, 2020. (Dkt. #66). The Court warned Plaintiff that it would dismiss his case for failure to prosecute if he did not comply with the Court's order. (*See id.*). The Court ordered Defendants to notify the Court by February 4, 2020, as to whether they had received the documents the Court had ordered Plaintiff to provide them. (*Id.*).

On February 4, 2020, the Court received a joint letter from Defendants stating that Defendant Santiago had received Plaintiff's properly executed medical release. (Dkt. #67). However, Santiago had still not received Plaintiff's responses to the remaining discovery demands, nor had Plaintiff executed a copy of the protective order. (*Id.*). Defendants sought the Court's dismissal of the action for failure to prosecute. (*Id.*).

On February 7, 2020, the Court endorsed Defendants' letter, stating that because Plaintiff had partially complied with the Court's prior order, the Court would grant Plaintiff one more extension of time, until February 28, 2020, to

8

provide responses to Defendants' outstanding discovery requests and to execute the protective order. (Dkt. #68). The Court ordered Defendants to notify the Court on March 6, 2020, with regard to whether they had received such responses. (*Id.*). The Court again warned Plaintiff that if Defendants did not receive such documents by February 28, 2020, the Court would dismiss his case for failure to prosecute. (*Id.*).

On March 6, 2020, the Court received a joint letter from Defendants. (Dkt. #71). The letter outlined all of the discovery issues in this matter. (*See id.*). The letter also explained that, to date, Defendants had not received either Plaintiff's responses to Defendants' discovery requests or an executed copy of the protective order. (*Id.*). Defendants asked, once again, for the Court to dismiss this case for failure to prosecute. (*Id.*). The Court has not heard from Plaintiff to date.

## DISCUSSION

Rule 41(b) provides in relevant part:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.

Fed. R. Civ. P. 41(b). Separately, the Supreme Court has recognized the inherent power of a district judge to dismiss a case for a plaintiff's failure to prosecute and for failure to comply with court orders. "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link* v. *Wabash R.R. Co.*, 370 U.S. 626, 629 (1962). A district judge may even, *sua sponte*, and without

9

notice to the parties, dismiss a complaint for lack of prosecution, and such dismissal is largely a matter of the judge's discretion. *Taub* v. *Hale*, 355 F.2d 201, 202 (2d Cir. 1966), *cert. denied*, 384 U.S. 1007 (1966); *Zielinski* v. *United States*, 120 F.2d 792 (2d Cir. 1941). "[F]ailure to prosecute under Rule 41(b) 'can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics.'" *Zappin* v. *Doyle*, 756 F. App'x 110, 112 (2d Cir. 2019) (summary order) (quoting *Lyell Theatre Corp.* v. *Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)).

The Second Circuit has held that a district court considering a Rule 41(b) dismissal must weigh five factors: "[i] the duration of the plaintiff's failure to comply with the court order, [ii] whether plaintiff was on notice that failure to comply would result in dismissal, [iii] whether the defendants are likely to be prejudiced by further delay in the proceedings, [iv] a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and [v] whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste* v. *Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas* v. *Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). No single factor is generally dispositive. *Nita* v. *Connecticut Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994).

To be sure, a Rule 41(b) dismissal, which operates as an adjudication on the merits, "remains 'a harsh remedy to be utilized only in extreme situations.'" *LeSane* v. *Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Theilmann* v. *Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972)). In this

10

regard, even where a plaintiff fails to comply with a court order that warns of possible dismissal, "the court must still make a finding of 'willfulness, bad faith, or reasonably serious fault'" by evaluating these factors. *Baptiste*, 768 F.3d at 217 (quoting *Mitchell* v. *Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013)). A *pro se* litigant's claims should be dismissed for failure to prosecute "only when the circumstances are sufficiently extreme." *Id.* (internal citation removed).

Even though "[n]o single factor is generally dispositive," each of the five factors articulated in *Baptiste* supports dismissal in the present case. 768 F.3d at 216. *First*, Plaintiff has failed to comply with the Court's repeated directives to respond to Defendants' discovery demands and to participate actively in discovery in this case. Defendants' requests, and the Court's orders, have not asked much of Plaintiff, and yet Plaintiff still has thwarted Defendants' (and the Court's) efforts to move this case along for at least a year now. *Second*, on four separate occasions (*see* Dkt. #42, 64, 66, 68), the Court has warned Plaintiff that if he did not actively participate in discovery, he would face dismissal of his suit. *See Peters* v. *Dep't of Corr. of New York City*, 306 F.R.D. 147, 149-50 (S.D.N.Y. 2015) (noting that Plaintiff had two notices of possible dismissal for failure to prosecute); *Watkins* v. *Marchese*, No. 13 Civ. 3267 (GBD) (SN), 2015 WL 4605660, at *2-4 (S.D.N.Y. July 31, 2015) (noting that "Plaintiff persisted in his refusal to meet his discovery obligations despite numerous warnings that his actions could lead to dismissal of his case"). *Third*, Defendants will be burdened by further delay in proceedings. This case

11

has been on the Court's docket for almost two years. Defendants have, on several occasions, had to participate in telephone conferences and write to the Court to notify the Court that they have not received responses to discovery requests. Plaintiff's delay has seriously impaired Defendants' ability to defend against Plaintiff's claims and to attempt to clear their reputations, given the serious nature of the charges they face. *See Watkins*, 2015 WL 4605660, at *3. *Fourth*, while the Court takes the allegations in Plaintiff's complaint very seriously, it has also spent considerable resources trying to get Plaintiff to comply with its directives and to explain to him the consequences for his continued failure to prosecute this case. *Kammona* v. *Midsummer Investment, Ltd.*, 687 F. App'x 112, 114 (2d Cir. 2017) (summary order) (affirming dismissal of suit for failure to prosecute where plaintiff failed to serve defendants despite three court orders). Despite assurances that he would respond to discovery requests, Plaintiff has provided minimal response, and no explanation for his repeated failures to follow through. *Fifth*, the Court has considered a sanction less drastic than dismissal, but concludes that such a sanction would be inappropriate because the Court has no reason to believe that Plaintiff will comply with future orders. Accordingly, the Court concludes that Plaintiff's conduct warrants dismissal of his case.

## CONCLUSION

Because the circumstances of the present case are sufficiently egregious, this case is dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: April 6, 2020
       New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge

*Sent by First Class Mail to:*
Philip E. DeBlasio
NYSID: 04489407Y
DIN No: 19-A-0070
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12582-0010